FRANCIS C. McMAHON et al., complainants-respondents,

*v.*

THE PNEUMATIC TRANSIT COMPANY et al., defendants-appellants.

[Argued November 30th, 1915.  Decided March 6th, 1916.]

1. The fact that a corporation purchased property from another corporation, holding a controlling interest in the purchasing company, at a greater price than the seller paid, is not alone sufficient to charge the directors of the purchasing company with actual fraud under section 49 of the Corporation act.

2. To support a preliminary injunction restraining the delivery of stock issued for property purchased upon the ground of overvaluation, the moving affidavits must show facts from which actual fraud in making the valuation may be inferred. There must be some fact tending to show overvaluation aside from the difference in price paid by the seller and the valuation fixed by the purchaser as a basis for stock issued therefor unless the difference be so great as to indicate a fraud.

3. Where a stockholder attends a meeting of the stockholders of a corporation, and votes to issue stock in consideration of property to be purchased, with knowledge of the facts, and allows two years to elapse during which the contract of purchase has been substantially carried out, and the property purchased used by the purchaser, without protest on his part, he is not entitled in equity to have the sale set aside upon the ground of overvaluation of the property, in the absence of proof tending to show that the action of the directors, which he as a stockholder approved, was a fraud upon him. He having approved the valuation is bound by it unless he shows that his action was induced by some fraudulent representation, or the concealment of some material fact by the directors.

On appeal from a decree of the court of chancery advised by Vice-Chancellor Leaming.

*Mr. Dougal Herr,* for the appellants.

*Mr. Thomas E. French,* for the respondents.

The opinion of the court was delivered by

BERGEN, J.

This is an appeal from an order made by the chancellor, as advised by a vice-chancellor, allowing a preliminary injunction restraining the Pneumatic Transit Company, hereinafter called the Transit Company, a corporation of the State of New Jersey, from issuing to the International Pneumatic Tube Company, hereinafter called the International Company, a corporation of the State of Maine, certificates for ten thousand shares or any other number of shares of the preferred capital stock of the Transit Company, and from paying, or attempting to pay, to the International Company, or anyone for it, any dividend or dividends thereon, and also restraining the International Company from assigning, transferring or attempting to assign or transfer

35

the said stock, and from encumbering it in any way. The bill was originally filed by Francis C. McMahon and Clifford P. Allen, Charles R. Stevenson being subsequently admitted as a complainant by order of the court. McMahon is the owner of ten shares, Allen of four shares, and Stevenson of twenty-five shares of the stock of the Transit Company, the par value being $10 a share, out of the total issue of approximately $1,500,000. The order rests upon the affidavits of McMahon, Allen and Stevenson, annexed to the bill of complaint. At the time the action now complained of was taken by the Transit Company, Stevenson was one of the directors of the Transit Company, and, subsequently, became, and now is, the treasurer, not only of the Transit Company, but also of the International Company. The substantial charges of the bill of complaint are, that the Transit Company had a contract with the government of the United States for operating pneumatic mail tube service in the city of Philadelphia, and desiring to acquire a license to use additional appliances protected by letters patent and applications for other patents, owned or controlled by the International Company, made an agreement with it to purchase the right to use such appliances in connection with its mail tube service then in operation within the city of Philadelphia, and also within twenty miles of the city hall, in Camden, New Jersey, and to pay therefor ten thousand shares of the preferred stock of the Transit Company; that this action was submitted to the stockholders of the Transit Company at a regular meeting, and then by them ratified and confirmed; that the complainants McMahon and Stevenson were both present at the meeting and voted for the resolution, McMahon moving its adoption, Allen, the other complainant, not being then a stockholder. The basis of the injunctive relief sought seems to be that as the International Company had paid but $47,000 for the control of the rights in all of the territory covered by the patents, the payment of $100,-000 in stock for their use in a limited territory was a fraudulent overvaluation of the property for which the stock was to be issued. The learned vice-chancellor put his conclusion upon the ground that there was an overvaluation of the property because the patents had cost the seller but $47,000, and the purchase was

accomplished through the complete dominion and control of the International Company over the Transit Company. This is not, in our opinion, sufficient to overcome the judgment of the directors of the Transit Company, as to the value of the property, which judgment, by the terms of the statute, is conclusive in the absence of actual fraud. *Corporation act, Comp.' Stat. p. 1630 § 49; Donald* v. *American Smelting and Refining Co., 62 N. J. Eq. 729.* In order to justify the allowance of an injunction, the affidavits upon which the application is made should disclose the material facts which should be verified by the oath or affirmation of some person who has a knowledge of them, the common form of verification not being sufficient. *Youngblood* v. *Schamp, 15 N. J. Eq. 42.* The gist of the complaint is, that in purchasing a license to use the rights held by the International Company, there was an overvaluation. If this be not so, then it is of very little consequence whether it be true or false, that it was brought about through the stock control of the Transit Company by the International Company, for no harm was done that would induce the court of equity to interfere, and the fact that the Transit Company paid in stock more than the rights has cost the International Company is not of itself conclusive proof of actual fraud. There is nothing to be found in the affidavits annexed to the bill of complaint to support any finding of actual fraud. The affidavit of McMahon shows that he was present at the stockholders' meeting and voted for the resolution, and while it neglects to state, as set out in his bill of complaint, that he "seconded said resolution," that fact was within his knowledge, and his affidavit states that the matters set forth in the bill are true so far as they relate to his own acts and deeds. His affidavit further sets out that he did not understand that one

"John E. Milholland was in any way interested in the matter, and from representations made at the meeting, supposed that the exclusive right and license proposed to be purchased from the International company was worth $100,000; that he did not know the International company had agreed to buy all the rights in the United States and elsewhere for less than half of the sum it was proposed to transfer the right within twenty miles of Camden and in Philadelphia to the Pneumatic Transit Company;"

that since that time he had learned that the whole matter was a scheme of Milholland by which the stock was to be issued to the International Company "for the Philadelphia rights to the worthless tunnel patents." There is no fact in this affidavit which tends to show that the property purchased was overvalued, nor any fact from which the presence of actual fraud can be inferred. The affidavit contained references to Milholland, who was neither a director or an officer of the Transit Company, from which it may be fairly deduced that deponent's conduct is actuated by enmity against Milholland rather than by the alleged overvaluation of the property purchased, but whether this be so or not, there is no fact set forth tending to show actual fraud, nor from which it can be inferred that the rights purchased are not worth the price paid, beyond the fact that it was more than they had cost the vendor, which, standing alone, would not be evidence of actual fraud. The statement in the affidavit that the rights were worthless is of no evidential value; it is simply the expression of an opinion without a fact stated to justify it. The affidavit of Allen is a mere verification of the bill of complaint and states no fact material to the determination of the question presented, and is of no consequence in the present proceeding. Nor does the affidavit of Mr. Stevenson throw any light on the question of value, or state a fact from which actual fraud in valuation can be inferred. The affidavit is very carefully drawn and excluded all facts, if any exist, relating to actual fraud in valuation. He admits that he was present at the special meetings stated in the bill of complaint, at which was considered the purchase of the tunnel rights—that is, the license, and that the proceedings at said special meeting are correctly set forth in the bill of complaint. He further says that efforts had been made by Milholland to have issued the ten thousand shares of the Pneumatic Transit Company to the International Company and the payment of dividends on that stock, and that he has refused to consent to the issuing of the stock and has voted against paying dividends thereon. He further says that the tunnel rights have not been transferred by any transfer, in writing, so far as he knows. There is nothing in this which tends to show that the rights purchased and for which the stock

was to be issued are not worth the par value of the stock. Mr. Stevenson was in a position to know all the facts concerning the transaction. He was present when the resolution to purchase was adopted, and he does not deny that he was fully informed of all the facts upon which he based his action in approving of the purchase, nor does he undertake to explain why with this knowledge he permitted the two companies to act upon this contract for over two years without making any complaint, and we cannot resist the feeling that his affidavit is disingenuous and superficial, and that it does not frankly state all of the facts of which he has knowledge. We find nothing in these affidavits to support a finding that the action of the board of directors, approved by the stockholders, was in excess of their powers or from which actual fraud may be inferred. This is an action between stockholders in which a very small interest is assailing the purchase of property by the board of directors, approved by the complainants as stockholders, in which the right of no creditor is affected, and we are considering the case from that standpoint as distinguished from the rights of creditors. But this is not all of the case, for the defendants, by their answering affidavits, show that, after the action of the board of directors was approved by the stockholders, the Transit Company actually executed the certificates of stock; they were signed by the then treasurer, Mr. Murray, and sent to the president of the Transit Company, who signed them, but, through some error on the part of his clerks, were not returned for delivery and were not found until December, 1914, when they were discovered in the safe in the president's office, and the matter then was called to the attention of the present treasurer of the company, Mr. Stevenson, in order that the transaction might be completed, who, although he was one of the directors of the Transit Company and voted for the resolution at a meeting held in his office, and who drafted the resolution adopted by the stockholders, took the position that the lapse of time had vitiated the agreement. The affidavits further show that the Transit Company offered to sell their plant to the United States government, and that the license purchased by the issue of the stock as aforesaid is indispensable to the proper operation of the underground transportation of mails, parcels

and freight, and this, in part, because of the adoption of the parcel post system by the mail department of the United States government. It is quite manifest, from reading these answering affidavits, that the rights purchased with the stock greatly add to the facilities of the Transit Company, and there is every reason to believe that it will greatly enhance its earning capacity, and was necessary to the successful operation of the service required.

It also appears that in the negotiations with the government of the United States for the sale of the entire plant, these rights were valued at $100,000. Under all these circumstances, it is not at all clear, at least not sufficiently so, as to warrant an injunction on the ground that there was such an overvaluation of these rights as to support a finding that in making the purchase the directors were guilty of the actual fraud which the statute requires in order to set aside their judgment which it makes conclusive in the absence of such fraud.

We also think that where, as in this case, the complainants were present and voted for the resolution, and with knowledge of the fact that for more than two years the two companies had been operating under the purchase, and during all that time stood by and made no protest, they are now estopped, in the absence of proof tending to show that the action of the directors was a fraud upon them, to deny the force and effect of their conduct, relying upon which the two defendant companies have availed themselves of the terms of the contract, which in equity has been executed. Having approved the valuation, they are bound by it unless they show that their action was induced by some fraudulent representation, or the concealment of some material fact, by the directors.

The order appealed from will be reversed and set aside, with costs.

*For affirmance*—None.

*For reversal*—THE CHIEF-JUSTICE, GARRISON, TRENCHARD, BERGEN, MINTURN, BLACK, WHITE, TERHUNE, HEPPENHEIMER, WILLIAMS, TAYLOR—11.