JOHN EARRUSSO and MARY EARRUSSO, complainants-respondents,

*v.*

TOWN OF MONTCLAIR, a municipal corporation of New Jersey, CATHERINE EGAN, JOSEPH EGAN and FRANK EGAN, trading as C. EGAN & SONS, defendants-appellants.

[Submitted May term, 1933. Decided September 27th, 1933.]

*Mr. George S. Harris,* for the appellant town of Montclair.

*Mr. Merritt Lane,* for the appellant C. Egan & Sons.

*Mr. Thomas Brunetto,* for the respondents.

The opinion of the court was delivered by

KAYS, J.

These two appeals are from orders of the court of chancery advised by Vice-Chancellor Backes. One appeal is by the town of Montclair and the other by Catherine Egan et al., trading as C. Egan & Sons. The matter arises out of a contract made between the town of Montclair and the complainants below and also involves a contract made between the town of Montclair and Catherine Egan et al. The one appeal is from an order denying the motion of the defendants Egan to strike out the amended and supplemental bill filed in the case and granting an injunction against the defendants, Egan and the town of Montclair.

The facts in the case were that the complainants owned some twenty-eight acres in East Hanover township, Morris county, which the town of Montclair used as a dump for its debris and refuse under a five-year contract dated September 30th, 1930. This contract provided among other things that the town should haul debris and refuse gathered in the town by its department of public works and dump same in and upon owners' premises for a period of five years. That the town should haul and dump upon owners' premises at least three loads of ashes per week for covering purposes in addition to its regular loads of refuse during the months of December, January, February and March for the life and duration of the contract. That the town should not divert cardboard boxes or papers collected by its refuse collection to any person, firm or corporation and should not enter into any contract for the sale, collection or disposal of said cardboard boxes or paper with any person, firm or corporation during the life of the contract. That the town should pay the owners $600 a year and also pay $1,200 a year to the owners for maintaining the premises of the owners in a satisfactory manner for dumping purposes and for taking care of refuse and debris carted to said premises by or on behalf of private citizens of said town. That the owners should have full authority in the designation of the place of deposit of said debris and refuse collection hauled to the premises. That the town of Montclair should have the sole privilege of dump-

ing on the aforesaid premises unless and until the owners have received the written approval of the town for the dumping of refuse from other sources. The bill as amended after setting up the contract alleges that large sums of money were spent by the owner in preparing the dump and that there was dumped thereon by the town of Montclair a large quantity of waste paper, old iron and old bottles which complainant had sold as junk and from which the complainants derived large sums of money and then charges that the town of Montclair had violated its contract. It appears on October 20th, 1932, the town of Montclair advertised for bids for the collection of garbage, ashes and rubbish and received bids on November 10th, 1932. The defendants, C. Egan et al., were the lowest bidders and entered into a contract with the town of Montclair, which provided among other things, that the contractor should save harmless the town of Montclair from all liabilities arising under an existing contract made between the town and John Earrusso, the complainant herein. The specifications which were made a part of the contract set forth that the town had a contract terminating October 1st, 1935, with the said John Earrusso by which it had the use of the property of the said Earrussos for the purpose of disposing of all its waste material except garbage and that the contractor must assume said contract (referring to the contract between the town and Earrusso) and shall after the termination thereof provide and maintain at his own expense a suitable place of disposal or dumping ground outside the limits of the town. The bill of complaint alleges that on December 29th, 1932, which was sixteen days before the execution of the contract between the town of Montclair and the Egans, complainants notified the Egans and the town of Montclair that they would be held to a strict performance of the contract between the complainants and the town of Montclair. The contract between the Egans and the town of Montclair provided that garbage and dry refuse be collected together. If this provision was adherred to the complainants alleged they would lose large sums of money which they had heretofore derived from the sale of waste

paper, brass, junk and the like. The prayer of the bill then asked that the defendants be enjoined *pendente lite* from performing the contract between the Egans and the town of Montclair in any manner which would cause a breach of the contract between the complainants and the town of Montclair. A rule to show cause was obtained by the complainants that the defendants show cause why they should not be enjoined from carrying out the contract between the Egans and the town of Montclair in a manner which would breach the contract between the complainants and the town of Montclair. The Egans moved to strike out the bill of complaint upon the ground that it disclosed no equity and that the remedy at law was adequate. Both of these matters were heard together before the vice-chancellor. Affidavits were submitted and the vice-chancellor held that "under a true construction of the contract between complainants and Montclair, Montclair was not permitted to dump garbage on complainants' land; Montclair had so construed the contract in its specifications when it called for bids for the collection of waste material and the Egans were bound by that construction: 'There is absolute certainty of contract and there is no doubt of its violation. The town, to save $3,000 a year consciously set out to impose on the complainants and the contractors, not unwilling, for their own gain, joined in the fraud. The unconscionable conduct is so glaring that milder words would not express the truth;' the bill of complaint was defective; it might be amended and upon proper amendment an injunction would issue, and a supplemental bill would be entertained to compel the town to perform." Complainants, by leave of the court, filed their amended and supplemental bills on February 17th, 1933. The vice-chancellor refused to strike out the amended and supplemental bill. Upon the filing of the amended and supplemental bill an injunction *pendente lite* issued restraining the mixing of the gatherings and from dumping them elsewhere than on the complainants' dump. The vice-chancellor based his views on the case of *Atlantic Refining Co. v. Kelly, 107 N. J. Eq. 27,* and upon the case of *Manhattan Manufacturing, &c., Co. v. New Jersey*

*Stockyards, &c., Co., 23 N. J. Eq. 161.* These cases held that. while there might be a remedy at law such a remedy would not be adequate.

We are of the opinion that the vice-chancellor properly restrained the defendants from dumping upon complainants' premises garbage or any refuse and debris mixed with garbage or ashes except the three loads of ashes provided for in the contract. The town of Montclair had so construed this contract by the specifications which it submitted to the Egans and made a part of their contract. We do not agree with the vice-chancellor, however, that a preliminary injunction should issue restraining the town of Montclair and the Egans from dumping the same at any other place than on the property of the complainants. The rules of equity procedure as to preliminary injunctions are laid down in the case of *Citizens Coach Co.* v. *Camden Horse Railroad Co., 29 N. J. Eq. 299.* Mr. Chief-Justice Beasley in that case said that, preliminary injunction is never granted unless the act threatened to be done will inflict an irreparable injury on the complainant. In considering such a question the court does not consider whether or not the complainant's rights have been so interferred with as to entitle complainant to an injunction on the final hearing of the cause. One of the defendants in this case is a municipal corporation and a preliminary injunction might inconvenience the municipality considerably more than the injury which might be sustained by the complainant. It would not be difficult to ascertain the damages to the complainant between the time when such preliminary injunction is asked for and the time of the final hearing of the case. Under the circumstances in this case, as set forth in the affidavits, we are of the opinion that the preliminary injunction should not have been granted. Therefore, the parts of the order restraining the defendants from mixing garbage with refuse and debris which may be dumped upon the complainants property are affirmed and the parts of the orders granting a preliminary injunction enjoining the defendants from dumping the refuse and debris on any other premises than those of the complainants are reversed.

*For modification*—THE CHIEF-JUSTICE, TRENCHARD, PARKER, CASE, BODINE, DONGES, HEHER, PERSKIE, VAN BUSKIRK, KAYS, HETFIED, DEAR, WELLS, DILL, JJ. 14.