This is an application by the complainant for an injunction restraining the defendants from (a) promoting, inciting, encouraging, directing and participating in any manner whatsoever, any strike against the complainant; (b) from picketing in any manner or under any guise or form, the premises of the said complainant or in the vicinity thereof; (c) from communicating in any manner whatsoever and to any person whomsoever, that there is a strike of the employes of the complainant, c.
After reading the affidavits submitted on behalf of the complainant, and the replying affidavits of the defendants, I felt that it would be advisable for all parties to this suit to have the affiants appear personally and submit to cross-examination in respect to the matters contained in their affidavits; and, accordingly, I signed an order to that effect, in pursuance of which the affiants appeared before me.
The bill alleges that the complainant is a New York corporation; that it conducted its business at 80 York street, Brooklyn, New York, up to August 31st, 1934, after which time it discontinued its business there, dismantled its plant, and removed its machinery and equipment to a building at 31 Wilkinson avenue, Jersey City, New Jersey, where it had been operating since February, 1934. Its business in Jersey City is not unionized; it operates what is known as an "open shop;" its employes in the Jersey City plant are not, and have not been, affiliated with the defendant United Shoe and Leather Workers Union, Local 23, or with any other union or organization. The Brooklyn plant, through an agreement with the union, was operated by union labor and was known as a "closed shop." The agreement with the union terminated on August 31st, 1934.
On September 5th, 1934, Stephen Lombardi, a former employe in the Brooklyn plant, allegedly acting under orders *Page 523 
from said local, led approximately fifty people to the entrance of complainant's Jersey City plant with the design, and for the purpose, of threatening, coercing and intimidating its employes; that the said gathering was successful in its object; that they insulted, abused, threatened and interfered with its employes; called them dirty scabs, and, inter alia, said, "you'll get yours if you don't quit and walk out;" that the members of that gathering then and there picketed and paraded up and down in front of the plant with large signs reading, "Strike at Restful Slipper Co., 31 Wilkinson Avenue, Jersey City, N.J., United Shoe Leo W. Union, 26 W. 15th St., N.Y."
The complainant denies that any of its employes are on strike. It charges that the pickets, and their associates, persistently follow its employes, direct vile epithets at them, and threaten them with bodily harm if they do not quit work.
The answer and counter-claim of the defendants say that the Jersey City plant is conducted as an "open shop." They deny that it is their aim to force the complainant to employ only members of the defendant union, or to operate its business under the "closed shop" system. They allege that the Brooklyn plant was closed and the employes therein discharged because the employes were members of a labor union. They contend that the closing of that plant was a repudiation of the recognized rights of employment of union members — a deliberate "lockout," and that that "lockout" caused the trouble or dispute now existing between the complainant and its employes. The defendants claim that by virtue of the dispute between them and the complainant, they peaceably picketed the complainant's plant in Jersey City with two of its members walking back and forth before the complainant's plant carrying signs as already indicated; they assert that the picketing was conducted under the supervision of the Jersey City police department and pursuant to its regulations; that during the time it was done an officer of the Jersey City police department was observing their actions and he at no time interfered with them or was called upon to interfere with them. *Page 524 
The defendants contend that the employes in the Brooklyn plant should not have been discharged, but that they should have been continued in the complainant's employment and placed in the Jersey City plant in preference to those engaged there; that the acquisition of the Jersey City plant by the complainant was a deliberate fraud upon their rights as employes and was a subterfuge resorted to in an attempt to circumvent the contract of labor under which they had been employed; that it did not in fact discontinue its business; that the business it is now conducting in Jersey City is its Brooklyn plant transferred without cessation, and that it is one and the same identical business it had directed in Brooklyn; that it is but a change in location without the slightest change in activity.
The defendants charge that the complainant refused to negotiate, or to arbitrate, with them or with any of its employes; and they maintain such attitude is in violation of section 7(a) of the National Industrial Recovery act as embodied in the code for the boot and shoe industry. They deny that there has been any violence used, or threats made, or intimidation or coercion exercised against any of the employes of the complainant and they deny that the union has directed or authorized any such conduct.
Is there a strike at the complainant's plant?
"A strike is cessation of work by employes in an effort to get for the employes more desirable terms."
"A lockout is a cessation of the furnishing of work to employes in an effort to get for the employer more desirable terms.
"Neither strike nor lockout completely terminates, when this is its purpose, the relationship between the parties. The employes who remain to take part in the strike, or whether the lockout, do so that they may be ready to go to work again on terms to which they shall agree, the employer remaining ready to take them back on terms to which he shall agree. Manifestly, then, pending a strike or lockout, and as to those who have not finally and in good faith abandoned it, a relationship exists between employer and employe, nor again that *Page 525 
of employer looking among strangers for employes, or employes seeking from strangers employment." Iron Molders' Union No. 125,of Milwaukee, Wisconsin, v. Allis-Chalmers Co.,166 Fed. Rep. 45; 20 L.R.A. (N.S.) 315 (at p. 321).
The employes contend that they are not responsible for the cessation of work; and the complainant does not assert that there was cessation of work through the act of the employes; it (the employer) avers it discontinued its business and that that act of discontinuance automatically dispensed with the service of its employes; if that be the correct situation, measured and judged by the standard set up in the last cited case, it cannot be successfully maintained that a strike is pending. The employes say that there is a cessation of furnishing of work to them and that it is due to an effort of the complainant to get more desirable terms for itself. If their contention be correct, then a lockout exists. Iron Molders' Union No. 125, of Milwaukee,Wisconsin, v. Allis-Chalmers Co., supra. Equity will draw from the facts and circumstances presented to it, fair, reasonable and legitimate inferences; and in its efforts to reach the truth, it "penetrates all disguises of form and disregarding the shadow, grasps the substance." Earle v. American Sugar Refining Co.,74 N.J. Eq. 751.
The defendants say a dispute concerning terms of employment exists between them and the complainant; the complainant denies the existence of such dispute. An issue of fact is thus presented. Pertinent to the issue raised is chapter 207, laws of 1926, which reads as follows:
"No restraining order or writ of injunction shall be granted or issued out of any court of this state in any case involving orgrowing out of a dispute concerning terms or conditions of employment, enjoining or restraining any person or persons, either singly or in concert, from terminating any relation of employment, or from ceasing to perform any work or labor, or from peaceably and without threats or intimidation recommending, advising or persuading others so to do; or from peaceably and without threats or intimidation being upon any public street or highway or thoroughfare for the purpose of obtaining or communicating information, or to peaceably and without threats or intimidation persuade any person or persons to *Page 526 
work or abstain from working, or to employ or cease to employ any party to a labor dispute, or to peaceably and without threats or intimidation recommend, advise or persuade others so to do, provided said persons remain separated one from the other at intervals of ten paces or more."
Chapter 207, laws of 1926, is declaratory of what the courts of this state, for many years prior to the passage of the act, has stated the law to be in cases "involving or growing out of adispute concerning terms and conditions of employment." It does not bar the employe from striking or peaceably picketing; but it recognizes and sustains his right to do so. Bayonne TextileCorp. v. American, c., Silk Workers, 116 N.J. Eq. 146.
Indeed, lawfully striking, or picketing, is the weapon with which the employe may legally "arm" himself to defend, or assert, his rights or maintain his status, in industrial disputes.
"The right to strike includes the right to use peaceable and lawful means to induce present and expectant employes to join the ranks of the strike. Picketing is one of such means, and is lawful if it does not have an immediate tendency to intimidate, or obstruct. The modern view is that picketing is not per se
unlawful, and should not be enjoined if peaceably carried on for a lawful purpose." Bayonne Textile Corp. v. American, c.,Silk Workers, supra.
District Judge Avis, of the United States district court for the district of New Jersey, in Miller Parlor Furniture Co.,Inc., v. Furniture Workers Industrial Union (not yet officially reported), said:
"A labor dispute may arise by reason of the desire of a labor organization to unionize any factory in its line of business, and a federal court may not, against the effort of the union to accomplish its purpose, interfere with it or its members in `giving publicity to the existence of, or the facts involved in, any labor dispute, whether by advertising, speaking, patrolling, or by any other method not involving fraud or violence.' 29U.S.C.A. § 104 (e)."
Certainly a dispute exists in the instant case; the facts presented by the affidavits clearly demonstrate that it exists *Page 527 
between complainant's employes, or some of them, and the complainant. That being the case, the defendants have a right to peaceably picket; but the picketing must be done according to law as prescribed by chapter 207, laws of 1926. Under the statute mentioned, the pickets must remain separated one from the other at intervals of ten paces or more. The photographs submitted in evidence indicate that no such distance was maintained between the pickets. This court approves lawful picketing, but if, in the course of it, any coercive, intimidating or illegal practices are resorted to by the persons so engaged, it will not tolerate them and it will enjoin the wrongdoers. The defendant union in this case is not an intermeddler; its right to represent its members in all matters relating to their employment is recognized.
"Labor unions, when instituted for mutual help, and co-operation, and the attainment of legitimate ends, are lawful. They are a necessary part of the social structure. They are a vital force in our industrial system, and essential for the advancement of the public welfare. The economic independence and security of labor are vital for the public order and welfare. As we have quite recently pointed out, it has long been regarded as a proper function of the state to foster the welfare and safeguard the interest of wage-earners. Economic and other considerations underlie this long established state policy. The amelioration of the condition of labor is recognized by enlightened government as a duty of paramount importance. And this solicitude for the wage-earners is not alone for the members of the favored class, but for the common good. It is conducive, if not, indeed, essential to the well-being of society that the economic security and contentment of the class that contributes so largely to the furnishing of its material needs be effected and sedulously maintained. Long v. Republic Varnish Enamel,c., Co. 115 N.J. Eq. 212." Bayonne Textile Corp. v. American,c., Silk Workers, supra.
If the means employed by the defendants to obtain recognition be peaceful and devoid of the elements of intimidation and obstruction, then in such case, they are lawful and *Page 528 
equity will sustain them in such acts. Picketing is lawful if it does not have an "immediate tendency to intimidation of the other party to the controversy, or an immediate tendency to obstruct free passage such as the streets afford, consistent with the right of others to enjoy the same privilege." Keuffel Esser
v. International Association of Machinists, 93 N.J. Eq. 429;American Steel Foundries v. Tri-City C.T. Council,257 U.S. 184.
The courts are concerned only with ascertaining, maintaining and sustaining the rights of all parties to the suit. "Each case must turn on its own circumstances. It is a case for the flexible remedial power of a court of equity, which may try one mode of restraint, and, if it fails or proves to be too drastic, may change it. * * * It becomes a question for the judgment of the chancellor." American Steel Foundries v. Tri-City C.T.Council, supra.
This court will prevent by its injunctive power intimidation and restraint. In my opinion, both intimidation and obstruction was resorted to in this matter. The restraint against unlawful conduct will continue. The court, however, will not restrain the defendants from peaceable picketing. Paragraphs a, b and c of the order, heretofore made, will be modified. The terms of modification, I understand, have been agreed upon by counsel for the complainant and the defendants, and I, therefore, shall sign the modified order upon its presentation. *Page 529