McPHERSON HOTEL COMPANY, complainant,

*v.*

WILLIAM W. SMITH et al., defendants.

[Decided April 2d, 1940.]

*Mr. Henry Collin Minton, Jr.,* for the complainant.

*Mr. Solomon Golat,* for the defendants Hotel and Employes Union et al.

*Mr. Thomas L. Parsonnel,* for the defendants International Brotherhood of Firemen, &c., et al.

BUCHANAN, V. C.

Complainant, operating the Hildebrecht Hotel in the City of Trenton, seeks permanent injunction, restraining defendants from interfering with the conduct of complainant's business by the exercise of violence, threats or intimidation against complainant's employes or customers, and further restraining the defendants from all picketing, patrolling or parading with placards or signs at complainant's hotel.

The defendants are the Hotel and Restaurant Employes' Union, Local No. 741, International Brotherhood of Firemen, Oilers, Power House Operators and Ice Plant Employes, Local No. 945, Bartenders' Union, Local No. 124, and their several respective business agents, representatives and members. A considerable number of complainant's employes,—indeed almost all of them,—were members of these several unions, at the end of December, 1939, and went out on strike the evening of December 27th, and have not since returned to work.

Ever since that time the defendant unions, including the strikers, have maintained a "picketing" of the complainant's hotel, by two picketers or patrollers, marching (singly but at the same time) back and forth on the sidewalk in front of each entrance to the hotel premises, bearing placards calling attention to the strike.

Complainant's proofs establish a few acts of violence and intimidation against complainant or complainant's loyal

employes. Defendants say that if any such were committed, they were not committed by the intent or with the knowledge or acquiescence of the unions or those in charge of the strike; and establish the instructions to the strikers and other members of the unions, by the unions and their officers, to avoid any unlawful conduct or acts and to maintain only peaceful picketing.

The acts of violence, threats and intimidation, established by complainant, are very few in number and occurred in the very early days of the strike. No continuance or recurrence of such acts has been shown by complainant; on the contrary it is admitted that ever since that time the picketing and patrolling has been carried on in an entirely peaceful and orderly manner.

The situation thus shown by the proofs is therefore not such as to warrant a finding that the conduct of defendants has been such "as to indubitably characterize the whole enterprise and course of conduct as an unlawful attempt to effect a deprivation of complainant's property rights." Hence, under the determination of the court of errors and appeals in *Bayonne Textile Corp.* v. *American, &c., Silk Workers, *116 N. J. Eq. 146; 172 Atl. Rep. 551,* complainant is not entitled to restraint of all picketing or other strike activities on the ground the strike was being carried on by unlawful methods.

On the other hand, that same decision is authority for the determination that inasmuch as there is evidence of illegal acts done either by defendants or by others on their behalf, and for the benefit, and in aid, of their strike, it is proper to issue restraint against any repetition or further commission of such unlawful acts. Defendants admit this, and consent to the entry of such decree.

Complainant further contends, however, that all picketing should be restrained because of the fact that (as complainant contends) it is being carried on for the purpose of compelling complainant to establish a "closed shop,"—(*i. e.* to agree to employ no one but members of the unions),—and that even peaceful picketing for such a purpose is unlawful.

Consideration of all the testimony and other evidence, however, leads to the conclusion that complainant has not established that such was, or is, the purpose of defendants. Certainly it has not been made to appear that such was the sole purpose of defendants,—nor even the main purpose. Still less is it established by the evidence, that it was or is the purpose or endeavor of these defendants, singly or in concert, to bring about, by means of this strike, a "closed shop" condition in either the whole, or the major part, of the entire industry or industries involved in the present dispute.

It is true that in the three various written drafts of demands or proposals presented to complainant by defendants, prior to the strike, there was a clause providing for a "closed" shop; but each of these drafts also contained clauses dealing with matters concerning wages, hours and conditions of employment. It is true that complainant's president testified that in the discussions shortly preceding the strike, the principal subject was "closed shop," and that defendants insisted on the closed shop, to which complainant would not agree, and the defendant union agents then said the defendants would strike. But there is no testimony that complainant and defendants had reached agreement, prior to the strike, on all points except the closed shop. On the contrary complainant's president testified that he had refused to sign a contract which provided any seniority rights for any employes as of any dates prior to the date complainant leased the hotel; and he further testified, with respect to a written draft of proposals submitted and discussed in conferences shortly after the strike, and which contained no closed shop provision, that he was never willing to sign it and was still unwilling to sign it. Although there is a conflict of evidence, there is testimony by credible third parties that defendants would have signed it; and defendants, at the hearing, stated that they were willing to sign it at the present time.

It is clear from the evidence, therefore, that there were disputes, prior to the strike, between complainant and its employes, relating to hours, wages and conditions of employ-

ment; and that those disputes or disagreements continue to exist, although there is now no demand by defendants for a closed shop.

Moreover in *Heyl* v. *Culinary Alliance, &c.,* (discussed later herein) it was held by the appellate court that no unlawful strike purpose was shown, notwithstanding the fact that (as appears by the record on the appeal) defendants were admittedly endeavoring to obtain a closed shop agreement by complainant.

It is concluded, therefore, that complainant is not entitled to restraint against all "picketing" or other strike activities on the ground that the purpose of the strike is illegal.

The only issue remaining is that with respect to complainant's contention that it is entitled to restraint against any and all "picketing," on the ground that no strike presently exists because the places of the employes who went out on strike have all been filled, and complainant's business is being adequately and normally operated.

It is held by our highest court that picketing is not *per se* unlawful, and that it is not to be enjoined if peaceably carried on for a lawful purpose; also that where peaceful picketing is carried on by strikers for the purpose of inducing present or prospective employes of their former employer to refrain from continuing or entering such employment, that purpose is a lawful purpose. *Bayonne Textile Corp.* v. *American, &c., Silk Workers, supra.*

It is clear that in the instant case the purpose of the defendants is not solely to induce present or prospective employes to leave or abstain from employment by complainant; they have also another purpose,—perhaps their principal purpose at the present time,—to wit, to induce present or prospective patrons of complainant to abstain from patronizing complainant. But this purpose is also a lawful purpose, under our decisions,—at least, where such attempts to persuade against patronizing complainant are made by striking employes of complainant (and their legitimate associates); are free from the taints of coercion, falsehood or misrepresentation; and have as their ultimate or main object the betterment of the condition of the strikers and not merely injury and damage

to complainant. *Perfect Laundry Co.* v. *Marsh, 120 N. J. Eq. 508, 186 Atl. Rep. 470,* and cases cited. (Reversed, but on a different point, \*121 N. J. Eq. 588; 191 Atl. Rep. 774.) That this seems also to be the view of the appellate court, is to be gathered from the opinion in *Evening Times, &c., Co.* v. *American Newspaper Guild, \*124 N. J. Eq. 71, 199 Atl. Rep. 598,* in which case restraints which had been issued were modified to permit the making of inoffensive announcements of the existence of a strike. See also *Newark Ladder, &c.,* v. *Furniture Workers, &c., 125 N. J. Eq. 99; 4 Atl. Rep. (2d) 49.*

On the other hand it is also held by our highest court that picketing, even if peaceful, is unlawful and will be enjoined, if carried on for an unlawful purpose. *Feller* v. *Local 144, International, &c., Union, \*121 N. J. Eq. 452, 191 Atl. Rep. 111,*—where no strike or dispute existed, nor had existed, between employer and employes, and the picketing was being done by an "outsider," (a labor union to which none of the employes belonged) in the endeavor to induce the employes to leave their employment and join the union.

In the *Bayonne Textile Case, supra,* the court was dealing with a situation where a strike and a labor dispute between employer and employes did exist, and it is possible, therefore, that the court's statement that "picketing is not *per se* unlawful, and should not be enjoined if peaceably carried on for a lawful purpose" should be understood and construed as applying only to a case where such a strike and labor dispute exists. However, the language of the appellate court is express and unambiguous and in the view of this court it is incumbent upon this court to interpret and apply that unambiguous language in accordance with its clear and express terms.

A factor of much weight in reaching this conclusion is the statute *R. S. 2:29-77,* (formerly *P. L. 1926, c. 207, p. 348*), plus the fact that the court (in the *Bayonne Case*) gave consideration to this statute, held (*p. 164*) that it was a valid enactment, and took it into account as an element in reaching its conclusion.

That statute provides that no restraining order shall be granted "in a case involving or growing out of a dispute concerning terms and conditions of employment," enjoining or restraining any person or persons "from peaceably and without threats or intimidation being upon any public street, * * * for the purpose of obtaining or communicating information," &c.

It is to be observed that this legislative provision does not express nor intimate any intent that its operation and effect is to be limited to cases where a strike exists. It is doubtless true that it is to be construed as though it contained the clause "between employer and employe," qualifying the word "dispute;" (and as though it contained the clause "except in aid or furtherance of an unlawful purpose," following the word "information"); but it expressly forbids the issuance of such restraint in a case *growing out of* a dispute between employer and employe concerning terms and conditions of employment.

It is deemed to be, presently, the law of this state, therefore, that peaceful "picketing" is not unlawful and is not to be restrained in any suit involving or growing out of a dispute between employer and employe concerning terms and conditions of employment, unless such picketing is being carried on in aid or furtherance of an unlawful purpose or object.

Obviously this present suit is one "growing out of" a dispute between employer and employes,—irrespective of whether or not a technical strike still exists; and, (as hereinbefore mentioned), that dispute was one concerning terms and conditions of employment. Furthermore, it cannot be said that the purpose of the picketing is unlawful. The proofs show that the original purpose was to seek to accomplish thereby the making by complainant of agreements relating to the employment of the employes, which were lawful to be entered into. If the former employes are now to be deemed no longer employes, the present purpose of the picketing is to accomplish the re-employment by complainant of such former employes and the entering by complainant into the agreements, or some portions thereof. None of these is unlawful.

It is therefore immaterial, in the present instance, whether

or not the strike has technically become terminated, and no longer existent, by reason of the permanent filling of the places of the strikers and the resumption of normal operations; and it results that this last contention of complainant is equally as ineffective as the others to establish a right to the restraint it seeks against the peaceful picketing. Its prayer for that relief must be denied.

Moreover the same result would be reached even if it should be deemed material to give consideration to complainant's contention that a "strike" no longer exists, and that further picketing by defendants is unjustifiable because they are not "strikers," nor employes engaged in a labor dispute with their employer.

Let us assume that the places of the strikers have all been filled with permanent and competent employes; that the strikers are not employes of complainant and that complainant has no positions open for any of them and is unwilling to employ any of them; and that the hotel is operating normally in all respects except that (as is conceded by both sides) as the result of the picketing its gross average business has been reduced to only some twenty-five or thirty per cent. of the volume prior to the strike and it is operating at a heavy financial loss. Indeed all this is sufficiently proven to the satisfaction of the court,—with this explanation, to wit, that the hotel presently employs some twenty or twenty-five fewer employes than it did prior to the strike, but this reduction in number of employes was because the hotel was previously over-manned, (as is conceded by defendants).

The case of *Mode Novelty Co.* v. *Taylor, 122 N. J. Eq. 593, 195 Atl. Rep. 819,* upon which complainant relies, lays down the principles (1) that where no strike exists picketing is unlawful; (2) that even if peaceful picketing was originally lawful by reason of the existence of a strike, it becomes unlawful as soon as the strike is ended; and (3) that "a strike is terminated when the places of the strikers have been filled with competent men and the employer's business is operating in a normal manner and to a normal extent." Assuming the second and third of these propositions to be

sound, (notwithstanding they seem to be contravened by the statute and by the *Bayonne Textile Case, supra,* and cannot be deemed supported by the *Feller Case, supra,* because in the latter case there *had not been* any strike or dispute between employer and employe), nevertheless it will be observed that the operation of the employer's business *"to a normal extent"* is specified as a factor in the termination and non-existence of a strike, equally as important as the operation "in a normal manner" and the replacement of the strikers by permanent, competent employes.

That factor does not exist in the present case. The *extent* of the operation of complainant's business is admittedly very far below normal. Hence complainant cannot be held to be entitled to the restraint it seeks, even under the authority of the *Mode Novelty Co. Case.* The reason for the inclusion of the factor of operation at normal extent, as an element in the termination of the strike seems clear. It might well be deemed that when *as a practical matter* a condition of strike no longer exists, the situation should be considered and dealt with as being similar to the situation where no strike had ever existed. But when can it be said that a condition of strike no longer exists as a practical matter? Technically of course as soon as the striker's places are filled with permanent competent men, the strikers are no longer employes of the employer, and there would be no longer in existence a "strike," by "employes." But obviously that is not the view. held by our courts, as evidenced by their expressions. It would seem that the law in this state to-day is that where employes have gone out on strike (for a lawful purpose) that strike is deemed to continue to exist, and the strikers are deemed to continue to be employes or *quasi*-employes (so far as concerns the question of lawfulness of picketing by them), as long as the strike has not been abandoned, or terminated by mutual consent, and there exists some reasonable possibility that the purposes of the strike (or some of them) may still be attained.

In the present case complainant has not shown that there is no such possibility. On the contrary it is reasonable to

suppose that complainant may eventually grant to the strikers some of the things for which they asked, rather than continue to operate indefinitely at the present financial loss. The fact that the business is not being operated to a normal extent disproves the contention that the strike has been terminated, and prevents complainant from being entitled to the restraint it seeks. This indeed is set forth in *Newark International, &c.,* v. *Theatrical Managers, &c., 126 N. J. Eq. 520, 10 Atl. Rep. (2d) 274,*—although in that case it would appear to have been *dictum.* However the determination of the appellate court in *Heyl* v. *Culinary Alliance, &c., \*126 N. J. Eq. 320, 8 Atl. Rep. (2d) 809,* seems to constitute an actual decision, and by our highest court, to the same effect.

Restraint against all picketing was issued by this court on two grounds,—one that the picketing was for the purpose of establishing a closed shop, and was therefore unlawful; the other that the places of the strikers had been filled and the business was being conducted normally, hence the strike was ended, and picketing was therefore unlawful. *Heyl* v. *Culinary Alliance, &c., 126 N. J. Eq. 384, 9 Atl. Rep. (2d) 331.* The appellate court reversed the chancery decree, and in its opinion, (*supra*), based the reversal on the same grounds as those set forth in its opinion in *Kitty Kelly Shoe Corp.* v. *United Retail, &c., Local 108, \*126 N. J. Eq. 318, 8 Atl. Rep. (2d) 767,* to wit, that the proofs before the court of chancery were insufficient to justify the restraint. This necessarily means that the proofs not only were not sufficient to justify the restraint on the "closed shop" issue, (with which we are not here concerned), but also that they were not sufficient to justify restraint on the ground that the picketing was unlawful as being carried on after the strike was at an end. Indeed this latter issue is the only one mentioned in the appellate opinion. Reference to the state of the case and briefs on the appeal discloses that the places of the strikers had admittedly all been filled and the business was being carried on, and also discloses that complainant herself admitted that her business was only 50% of normal. Clearly, therefore, the appellate opinion must be deemed a holding

that where the business of complainant is operating at considerably less than normal extent, and strike activities are continuing, the strike cannot be said to be at an end so as to warrant restraint against continuance of picketing.

Restraint against violence, threats or intimidation will be decreed. Restraint against peaceful picketing will be denied. Leave will be reserved to complainant to make further application, at the foot of the decree, upon proof of materially changed circumstances. No costs to either side.