The complainant is a corporation of the State of New York. It operates twenty-three stores in that state and six stores in this state. The New Jersey stores are located in Jersey City, Newark, Elizabeth, Paterson, Union City and Perth Amboy. In its New Jersey stores it has forty-seven employes.
The defendant union Local 830 is a labor organization which counts among its membership many of complainant's New York employes, and some of its New Jersey employes. The New York Labor Relations Board has designated it as the collective bargaining agency of complainant's New York City and Westchester county, New York, employes. Local *Page 451 
830 for a period of at least one year had been negotiating with complainant for better working conditions, hours and wages of employment for complainant's employes without satisfactory adjustment, with the result that on or about November 13th, 1940, the local called a strike of complainant's New York City employes. The defendants, Ralph Rispoli and Joseph Hoffman, two of complainant's Union City employes, and Benjamin Bonn, from its Paterson store, who are members of Local 830, left complainant's employ — Rispoli on November 13th and Hoffman and Bonn on November 16th, 1940 — and engaged in picketing complainant's stores in Paterson and Union City. While picketing, they carry placards upon which is inscribed "Employes of Vim are on strike for decent working conditions. Retail Employes Union Local 830." The Newark store is being picketed by persons who, it is alleged, have never been in complainant's employ. As to them the bill recites:
"The said pickets of the Newark store never were employes of this complainant and are complete strangers to this complainant. These pickets are picketing at the same time and are walking together about three feet from the show windows. These pickets are very noisy and speak out very loudly. These pickets speak so loudly that salesmen are required to turn on the radios at full blast to enable the customers to hear the radios which are being sold. These pickets are on hand generally between eleven A.M. and ten P.M. when the Newark store closes. The manner in which these men are picketing renders passage across the sidewalk and ingress and egress to and from complainant's Newark store difficult. From time to time one of the pickets has walked up and down across the entrance lobby to the store. The presence of these pickets and the manner in which they carry on their picketing is a threat and intimidation not only to persons who are actually or prospective customers of the complainant but also with respect to the employes of this complainant."
The bill does not allege violence, threats, picketing in large numbers, or the commission of acts which are considered coercive. It is largely devoted to complainant's troubles with the New York local. It states that there is no strike in *Page 452 
progress in New Jersey, and that the vacancies caused by the three defendants leaving its employ have been filled by capable, competent, efficient and experienced substitutes. However, the allegations in paragraphs 20 and 22 of the bill convey the inference of labor trouble between complainant and defendants. Those paragraphs read as follows:
20. "* * * Actually out of the forty-seven employes in the six stores in New Jersey conducted by this complainant, only three employes left their jobs, two in Union City and one in Paterson. None of the other employes have left their employment and none of the other employes have authorized a strike or have authorized Local 830 to represent them in collective bargaining."
22. "* * * All of the aforementioned employes, except the defendant, Benjamin Bonn, are presently working and are satisfied with their wages and hours and other working conditions. None of these men, except Benjamin Bonn, authorized Local 830 to call a strike for them and none of these men, except Benjamin Bonn, have authorized Local 830 to bargain collectively for them."
The defendants say that the strike of complainant's employes in both New York and New Jersey, is current and is the result of a labor dispute. They allege that their activities are of a most peaceful nature, and are of a kind recognized as proper, lawful and appropriate. They aver that they attempted in good faith to negotiate with the complainant to secure for its employes better working conditions, satisfactory hours of employment and fair wages; they asked to extend to the union, full recognition as collective bargaining agent in accordance with "the authorization of the Vim employes to that effect." The defendants further allege that the strike in progress in New York and in this state was caused solely by the complainant's attempt to "disregard its obligation to bargain with the local union."
While it may be conceded that the positions of the three former employes of complainant in this state have been filled and taken by others, that in itself does not effect a termination of the strike. While the bill alleges that the three men hired in the place of complainant's three former employes, *Page 453 
are capable, competent, efficient and experienced, and are doing satisfactory work, yet complainant's conclusion to that effect is challenged by the defendants. They contend that it lacks a recital of the essential, ultimate facts which lead to the inference.
The court's language in McPherson Hotel Co. v. Smith,127 N.J. Eq. 167; 12 Atl. Rep. 2d 136, on the question of when a strike may be considered terminated, is, in the circumstances, illuminating; in part, it reads as follows:
"But when can it be said that a condition of strike no longer exists as a practical matter? Technically of course as soon as the strikers' places are filled with permanent competent men, the strikers are no longer employes of the employer, and there would be no longer in existence a `strike,' by `employes.' But obviously that is not the view held by our courts, as evidenced by their expressions. It would seem that the law in this state to-day is that where employes have gone out on strike (for a lawful purpose) that strike is deemed to continue to exist, and the strikers are deemed to continue to be employes orquasi-employes (so far as concerns the question of lawfulness of picketing by them), as long as the strike has not been abandoned, or terminated by mutual consent, and there exists some reasonable possibility that the purposes of the strike (or some of them) may still be attained."
In the instant case, the present and continuous picketing by the complainant's former employes, shows that the strike is still in progress. Newark International, c., v. TheatricalManagers, c., 126 N.J. Eq. 520; 10 Atl. Rep. 2d 274. The complainant expresses fear of loss of business from the picketing; yet, it does not show that the picketing has materially affected its business. Meyer v. Somerville WaterCo., 79 N.J. Eq. 613; 82 Atl. Rep. 915; Meyer v. SomervilleWater Co., 82 N.J. Eq. 572; 89 Atl. Rep. 545; Brunetto v. Townof Montclair, 87 N.J. Eq. 338; 100 Atl. Rep. 201; McMahon v.Pneumatic Transit Co., 85 N.J. Eq. 544; 96 Atl. Rep. 999;Schindler Adv. Co. v. Public Service Transportation Co.,97 N.J. Eq. 542; 127 Atl. Rep. 786; Perth Amboy Gas Light Co. v.Kilek, 101 N.J. Eq. 805; 138 Atl. *Page 454 Rep. 886; Helbig v. Phillips, 107 N.J. Eq. 138;152 Atl. Rep. 919; Rissler v. Plumbers Local No. 326, c., 109 N.J. Eq. 91;156 Atl. Rep. 498; Earrusso v. Montclair, 114 N.J. Eq. 12;168 Atl. Rep. 398; Sneath v. Lehsten, 120 N.J. Eq. 327;185 Atl. Rep. 55.
The affidavits of the defendants, as hereinabove stated, admit the picketing of complainant's stores. The affidavit of Abe Silverberg, president of Local 830, in part, says:
"The purpose of the picketing is to inform the public that there is a strike against the company and that the union is attempting to get favorable working conditions for the employes of the said company. The public is asked to aid the union in its strike by refusing to patronize the stores until the strike is settled."
Paragraph 5 of the affidavit of Sophie Feinstein, business manager of Local 146, in part, reads:
"The picketing is carried on in order to apprise the public generally that there is a strike being carried on by the union."
The striking employe, Benjamin Bonn, in paragraph 8 of his affidavit, says:
"We made an appeal to the public to support our strike by not patronizing Vim Electric stores. * * * Our sole purpose in carrying on the picketing was to inform the public that the strike existed."
In Restful Slipper Co., Inc., v. United, c., Union,116 N.J. Eq. 521; 185 Atl. Rep. 12, this court in part said:
"Picketing is lawful if it does not have an `immediate tendency to intimidation of the other party to the controversy, or an immediate tendency to obstruct free passage such as the streets afford, consistent with the right of others to enjoy the same privilege.' Keuffel Esser v. International Association ofMachinists, 93 N.J. Eq. 429; American Steel Foundries v.Tri-City C.T. Council, 257 U.S. 184."
The right of defendants to convey truthful information of their disputes with their employer to the public is recognized and it is entirely proper and legal for them to do so. That *Page 455 
right is granted them not only by our R.S. 2:29-77, but also by a long line of federal court decisions, among them being:Gitlow v. New York, 268 U.S. 652; Fiske v. Kansas,274 U.S. 380; Stromberg v. California, 283 U.S. 359; Near v.Minnesota, 283 U.S. 697; Grosjean v. American Press,297 U.S. 233; DeJonge v. Oregon, 299 U.S. 353; Herndon v. Lowry,301 U.S. 242; Senn v. Tile Layers Protective Union, 301 U.S. 468;Lovell v. Griffin, 303 U.S. 444; Schneider v. New Jersey,308 U.S. 147; Hague v. C.I.O., 307 U.S. 496; Thornhill v.Alabama, 310 U.S. 88; Carlson v. California, 310 U.S. 106;Cantwell v. Connecticut (Case 632, October term, 1939, United States Supreme Court. Decided May 20th, 1940).
The very recent opinion of the Court of Errors and Appeals inE.L. Kerns Co. v. Landgraf, 128 N.J. Eq. 441, wherein Mr. Justice Perskie, speaking for the court, in reversing a decree of restraint, sustains and emphasizes such right. The court, among other things, said:
"The wording on one side of the circulars was: `To Organized Labor, Friends and Sympathizers, E.L. Kerns Beverages are non-union made. The Soft Drink Workers Local 26, of Trenton, will appreciate your patronage of soft drinks made in Trenton, in union shops, by skilled labor, working under union conditions, wages and hours. I.U. of U.B.F.C.D.W. of America, Local 26.' The wording on the other side was: `Demand beverages made by these concerns Union made, Coca Cola Bottling Company, Mercer Beverages, O.K. Bottling Co. — made in Trenton.'
"Neither the pleadings, nor the proofs, nor any legitimate inferences deducible therefrom warrant any suggestion that the statements on the circulars were in anywise untrue. The distribution of these circulars was made not on, nor in front of, nor adjacent to complainant's place of business, but miles away therefrom. The Union's action was free from coercion, duress, threats, force or violence; it was altogether peaceable.
 * * * * * * *
"* * * all that the Union did by distributing the circulars, in manner already stated, was to bring its commodity, if so it may be characterized, or its concept of the proper *Page 456 
relationship between employer and employe to the buying public who had and has a real social and economic concern in the resultant consequences flowing from the laboring practices followed in complainant's factory. Cf. Thornhill v. Alabama,310 U.S. 88; 84 L.Ed. 1093; Bayonne Textile Corp. v. American,c., Silk Workers, supra.
"If a merchant may freely, fairly, honestly and peacefully compete with other merchants, as is the common daily practice, `by means of advertisements in the press (or) by circulars, or by his window displays or by radio, so a union may in like manner, here by circulars, compete with non-union concerns for customers. * * *
"Additionally, we are of the opinion, and so hold, that, under the circumstances exhibited in the instant case, the restraint imposed constitutes an infringement of the Union's right of freedom of speech and freedom of press both under our State and Federal Constitutions, notwithstanding the fact that there was no strike nor dispute between complainant and its employes. For an analogy in principle compare, Thornhill v. Alabama, supra;Carlson v. Shasta County, California, 310 U.S. 106;84 L.Ed. 1104."
The defendants contend that they are absolutely within their rights to call a strike against all the stores of the complainant in this state; that their grievance is not against an individual store, but against the employer complainant. The strike exists in New Jersey and New York; the disputes, troubles or differences from which it resulted, were and are among all the parties to this suit, who are participating in it in both states.
In Restful Slipper Co., Inc., v. United, c., Union, supra, appears:
"A strike is cessation of work by employes in an effort to get for the employes more desirable terms."
It is a single strike. Newark Ladder and Bracket Sales Co. v.Furniture Workers, 125 N.J. Eq. 99; 4 Atl. Rep. 2d 49.
Contradictory of the complainant's declaration that there is no strike are these excerpts from the affidavits filed by the defendants:
 By Silverberg: *Page 457 
"Among the conditions requested by the union are the reduction of the working hours to forty-eight a week, increase in wages, vacations with pay, discontinuance of the practice of discriminating against active union members, and equalization of sick leave so that female employes should get the same sick leave as male employes."
By Feinstein:
"Since the strike was called, there has been picketing under my direction in front of the Paterson store of the company. The greater part of the time we have had one picket in front of said store, and occasionally there are two pickets. The sidewalk in front of said store is very deep, and the picketing by one or two persons does not interfere with the customers who may desire to patronize the store. The picketing has been carried out in an orderly fashion and without any violation of state law or city ordinances. * * *"
By Rispoli, a striking employe:
"In January, 1940, I became a member of Retail Employes Union Local 830, and since then have taken an active part in the work of the union.
"The union, from October, 1939, to November, 1940, was negotiating with the company for all of its employes, including those of us in New Jersey, in order to obtain better working conditions and higher rates of pay for all of us. In November, 1940, a strike was called because of the failure of the complainant company to agree to bargain collectively with the union on our behalf. When I received word that the strike had been called on November 13th, 1940, I joined with the rest of the members of the union who were employes of the company, and went out on strike.
"After we went on strike I picketed the Union City store. * * * on occasion there are two pickets. The pickets carry signs which represent the true state of facts, to wit, that Local 830 is on strike against the complainant company in order to obtain decent working conditions and decent wages."
By Hoffman, a striking employe:
"In April, 1940, I became a member of Retail Employes Union Local 830, affiliated with the United Retail Wholesale Employes of America, and since then have taken an active part in the work of the union.
"I went to union meetings, and on most occasions I was accompanied by Mr. Bonn, the assistant manager of the Union City store, who has since been transferred to the Paterson store, and Ralph Rispoli. On one occasion, as we were going to a meeting and Bonn and Rispoli got into my car, the manager of the store, Paul Maranti. *Page 458 
came up to me and said, `As long as you are going to union meetings, from now on I will see to it that you don't get Monday nights off. You'll have to take a split shift so that you won't get the benefit of Monday nights off.' This rule of his was put into effect the following week. This was done solely to discriminate against me because I was a member of the union and to prevent me from attending union meetings. * * *
"Prior to the time I joined the union, the union had been negotiating with the complainant company, a contract to cover the working condition of all of the employes of the company in their stores in New York and New Jersey. Since I joined the union, it has continued to negotiate with the company in order to get improved working conditions for me and the other employes of the company. Amongst our demands which we submitted to the company were a reduction in our working hours to 48 hours per week, an increase in pay and vacations with pay. On November 13th, 1940, the union called a strike because of its inability to obtain a satisfactory contract covering terms and conditions of employment for us.
"I continued to work to the end of that week, and on November 16th, 1940, I went out on strike and joined the rest of the members of the union who were on strike against the company. I picketed the Union City store, after arrangements had been made by our officials with the Police Department as to the manner in which we were to conduct our picketing. The picketing consisted usually of one man in front of the store, except during certain times of the day when we had two pickets. In any event, at no time were there more than two pickets. We carried signs which indicated that our union was striking against the complainant company. At no time did we prevent customers from going into the store. At no time did we intimidate or coerce any person who desired to go into the store to purchase goods. We did ask the customers to help us to win our strike by refraining from purchasing from the company until the strike was settled. The picketing was carried on in a peaceful, lawful and legal manner. No customers were prevented from going into the store. No employes were hindered in going in and out of the store. No disturbances of any kind were created. There was no violation of any of the laws of the state, and no breach of the peace. Our sole purpose and our sole idea in picketing was to inform the public of the fact that there was a strike which was being carried on by our union against the complainant company."
By Bonn:
"On or about June, 1940, Local 830 filed a petition for certification with the New York State Labor Relations Board, requesting that it be certified as the bargaining agency for the employes of the company employed in the New York stores. Up to that time I had been quite active in the union, so much so that I was warned, in January of 1940, that I was not to go into any of the Vim stores except the one in which I was employed, and that I was not to converse with *Page 459 
any of the employes. This warning was given to me by Mr. Abraham Hirsch, the general sales manager of the company. He also informed me that the manager of the 42nd street store had complained that I had talked to a number of his people.
"From that time on there were continuous acts of discrimination against me, all of which I attribute and charge were caused by the fact that I was active in the union. * * *
"On November 13th, 1940, the union called a strike against the company because of the company's failure to bargain and to meet the demands of the union for improved working conditions. I, as a member of the union, joined with the rest of the membership and went out on strike on November 13th, and we started to picket the stores of the company. Our picketing in New Jersey has been carried on as a legal strike activity in order to inform the public of the existence of a strike."
The evidence as indicated by the filed affidavits, clearly shows that there is a dispute between the complainant and its employes. The statute in such case permits picketing. Consequently, complainant's prayer for injunctive relief will be denied.
The defendants will be permitted to picket complainant's stores; but, at no time, shall there be more than two pickets at any one store. The conduct of the pickets must be free from all coercive, threatening and violent tactics. *Page 460